☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.24-812M(NJ) |
| Target Devices 1 & 2, Currently in Law | ) | |
| Enforcement Custody, as Further Described in | ) | |
| Attachment A | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 3/21/2024 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____ 09/03/2024 _____ .

Date and time issued: 3/7/2024@ 11:18 a.m. _____

*Nancy Joseph signature*
*Judge's signature*

City and state:   Milwaukee, WI _____      Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

The properties to be searched are as follows:

    a. Apple iPhone 15 Pro - IMEI: 352400477209551, hereinafter, TARGET DEVICE 1; and

    b. Apple iPhone 15 Pro – IMEI: 354070966587706, hereinafter, TARGET DEVICE 2.

TARGET DEVICES 1 and 2, or the TARGET DEVICES, are currently located within the custody of Kenosha County Sheriff's Department, located at 1000 55th Street #1, Kenosha, WI.

This warrant authorizes the forensic examination of the TARGET DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

1

# **ATTACHMENT B**

1.  All records on the TARGET DEVICES described in Attachment A that

relate to violations of 21 U.S.C. §§ 841 and 846, and involve Rosendo HEREDIA, from

2014 – Present, including, but not limited to:

   a. Lists of customers and related identifying information:

   b. Types, amounts, and prices of drugs and firearms trafficked as well as dates, places, and amounts of specific transactions;

   c. Any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   d. Any information recording schedule or travel;

   e. All bank records, checks, credit card bills, account information, and other financial records;

   f. Photographs and/or videos depicting possession of drugs and firearms;

   g. Any evidence related to either the ownership, purchase, or possession of drugs and firearms;

   h. Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses: and

   i. All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the TARGET DEVICES;

2.  Evidence of user attribution showing who used or owned the TARGET

DEVICES at the time the things described in the warrant were created, edited, or

deleted, such as logs, phonebooks, saved usernames and passwords, documents, and

browsing history;

1

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**Target Devices 1 & 2, Currently in Law Enforcement<br>Custody, as Further Described in Attachment A** | )<br>)<br>)<br>)<br>)     Case No. 24-812M(NJ)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern District of _____ Wis c o n s i n _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Distribution of a controlled substance, and Conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __09/03/2024__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

James Buck, FBI SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 3/7/2024

City and state: _Milwauk ee, WI _____

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVID IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, James Buck, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) for a search warrant authorizing the examination of property – electronic devices – which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since June of 2023. Since June of 2023, I have been assigned to the FBI's Milwaukee Area Safe Streets Task Force (MASSTF), a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including narcotics trafficking and conspiracy to possess narcotics with intent to distribute, as defined under Title 21 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why narcotics traffickers typically conduct various aspects of their criminal activities.  I have experience in the investigation of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can

1

be used by law enforcement to assist in identifying the users of cellular devices and their location.

3.       The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.       The properties to be searched are as follows:

a.   Apple iPhone 15 Pro - IMEI: 352400477209551, hereinafter, **TARGET DEVICE 1**; and

b.   Apple iPhone 15 Pro – IMEI: 354070966587706, hereinafter, **TARGET DEVICE 2**.

5.       **TARGET DEVICES 1** and **2**, or the **TARGET DEVICES,** are currently located within the custody of Kenosha County Sheriff's Department, located at 1000 55th Street #1, Kenosha, WI.

6.       The applied-for warrant would authorize the forensic examination of the **TARGET DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.       In 2023, law enforcement officers of the FBI Milwaukee Safe Street Task Force began investigating Rosendo HEREDIA ("HEREDIA") for narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2

8.      HEREDIA associates with members of a sub-set of the Burleigh Zoo Family street gang. Evidence gathered to date reflects that the Burleigh Zoo Family are a violent street gang and that many of its members are heavily involved in trafficking illegal drugs throughout the City and County of Milwaukee. Burleigh Zoo Family member and self-proclaimed rapper, Justin Loyde, produced a song, "Make A Way" along with a music video featuring numerous members of Burleigh Zoo Family and HEREDIA. The lyrics of the song contain references to firearms equipped with auto SEARs and drug trafficking in kilogram quantities of narcotics. In the music video a gold-plated money counter machine can be observed while Loyde states that he is, "busting down bricks of yay." Case agents understand Loyde's statement to be a reference to the cutting and mixing of cocaine powder derived from pressed-kilograms or "bricks" with various adulterant agents to increase the profit margin of the narcotics on the street. Case agents know that drug traffickers regularly use money counters to reconcile cash proceeds stemming from drug trafficking. In the song, Loyde challenges others to go "brick for brick" with him, referencing Loyde's supply of kilogram amounts of narcotics to be more substantial than other drug traffickers' narcotics supply.

9.      The investigation has led case agents to believe that HEREDIA is a source of supply for Burleigh Zoo Family's narcotics. Financial analysis of HEREDIA's accounts indicated irregular and non-standard banking methods. For example, HEREDIA's account with American Express depicts habitually excessive spending that exceeded an average of $25,000 a year on purchases exclusively from the luxury brand Louis Vuitton, totaling approximately $112,322.99 between February 26, 2019, and July 17, 2023. The

3

numerous charges to the American Express account range from hotel rooms in San Diego, Chicago, and Las Vegas, to luxury department store purchases at Saks, specifically at locations in New York and Las Vegas. HEREDIA's payment methods to American Express account are also unusual. HEREDIA's account regularly receives payment in similar successive money orders within the same day. Between March 11, 2022, and June 16, 2023, American Express received approximately 103 money orders, totaling $97,974 for payment to the American Express account used by HEREDIA. Case agents believe that the irregularity of HEREDIA's banking methods, and specifically the use of successive money orders, is indicative of the attempt to conceal the origin of the money. The financial analysis of HEREDIA's known bank accounts further corroborates that HEREDIA is a known wholesale supplier of cocaine powder and heroin and has become heavily involved in suppling narcotics to members of the Burleigh Zoo Family.

10.     In December 2023, the Kenosha County Sheriff's Department recovered a stolen Dodge Durango. The subject operating the stolen Dodge Durango was taken into custody and identified via his WI Photo driver's license as Rosendo HEREDIA (DOB: xx/xx/1972). Investigators conducted an interview of HEREDIA regarding his possession of the stolen automobile. HEREDIA voluntarily provided information about the vehicle in his possession and the details of how he purchased the vehicle. At the time of his custody, HEREDIA's three cellphones, including **TARGET DEVICES 1** and **2**, were taken as evidence for the investigation into the stolen automobiles. HEREDIA provided passwords for two of the three cellphones but denied consent for the cellphones to be searched.

4

11.    In January 2024, the Kenosha County Sheriff's Department obtained search warrants for the three phones recovered from HEREDIA. Two phones, **TARGET DEVICES 1** and **2**, were able to be extracted for forensic examination.

12.    During a cursory examination of **TARGET DEVICE 1**, law enforcement observed several text messages that were sent to numbers without contact names stating, "872-289-9724 new work number Pablo." The forensic examination of **TARGET DEVICE 2** revealed the device used an Apple ID listing to Pablo Lopez and an email address of pabolopez19831970@icloud.com.  The contact card for **TARGET DEVICE 2** listed Pablo Lopez, phone numbers 346-586-3977 and 872-283-9124 along with the same email used for the iCloud account.

13.    Investigators are aware that HEREDIA uses numerous aliases or nicknames during his interactions with members of the Burleigh Zoo Family, including "Pablo."

14.    Based on their training and experience, case agents know that individuals engaged in drug trafficking may switch telephone numbers on a frequent basis to avoid detection by law enforcement. Additionally, case agents believe that the reference to "work" in the text messages observed and detailed above is a reference to HEREDIA's illegal drug business. Therefore, case agents believe based on their training and experience that HEREDIA used **TARGET DEVICE 1** to conduct his narcotics trafficking, and that upon getting a new phone number (**TARGET DEVICE 2**), he advised his drug associates of the new phone number to continue drug business.

15.    A cursory review of **TARGET DEVICE 1** also revealed a photograph of a firearm in a case with magazines from "Mac1," with the telephone number (414) 213-

5

6882. Based on this investigation, this phone number is believed to be used by Kwan WILSON, a drug trafficking associate of HEREDIA's and another member of the Burleigh Zoo Family street gang. The photograph was accompanied by a text message to HEREDIA indicating the firearm was a 40 Glock 22, and someone was asking for "8." Without reviewing the entirety of messages between HEREDIA and the person believed to be WILSON, case agents believe that WILSON asked HEREDIA for 8 of this specific model firearm for purchase. According to Wisconsin court records, HEREDIA and WILSON are convicted felons and are therefore prohibited from possessing firearms. *See State of Wisconsin v. Rosendo Heredia*, Racine County Case Number 2005CF1265, and *State of Wisconsin v. Kwan Wilson*, Milwaukee County Case Number 2018CF85.

16.     A cursory review of **TARGET DEVICE 2** revealed text communications originating on November 26, 2023, between HEREDIA and the number (262) 933-9692 with the contact name "Wank."  The conversation discusses apparent plans for meeting up for a night out. Then HEREDIA asked, "Did you leave Chicago yet?" "Wank" replied with a photograph and the caption, "Finishing." "Wank" sent a photograph sent along with the text message that depicted a cocaine press on a table with white powder residue, which case agents believe to be narcotics. Based on the photograph, case agents believe "Wank" indicated to HEREDIA that "Wank" had not left Chicago yet because "Wank" was manufacturing controlled substances using the press depicted in the picture s/he sent HEREDIA.

17.     Text communications originating on November 25, 2023, were observed on **TARGET DEVICE 2** between HEREDIA and the number (414) 998-9536 with the contact

name "Magoo."  The conversation began on November 25, 2023, with HEREDIA sending "Magoo" the text stating, "New Number Pablo." The following day, HEREDIA sent a message at 7:37 p.m., statin: "yo yo"; "just a sample"; and "10pc nugget." "Magoo" responded with "ok." At 9:17 p.m., HEREDIA messaged "Magoo" saying: "Way"; "Yo yo"; "35 best I can do so 875 for 25." On November 27, 2023, HEREDIA messaged "Magoo" stating, "Ready when you are." "Magoo" replied that he needed to see his "p o" and told HEREDIA to arrive after 5.  HEREDIA then stated that he had a flight at 4 p.m. and would be out of town.  HEREDIA added, "Tell bro work with them 10 it's the same as 25 so I know what's up when I get back." Based on their training and experience, case agents believe this conversation to be regarding the purchasing of specific weights of narcotics using the code "nugget" in place of the narcotics.

18.     The **TARGET DEVICES** are currently in the lawful possession of the Kenosha County Sheriff's Department. They came into Kenosha County Sheriff's possession after HEREDIA was arrested pursuant to the traffic stop of the stolen automobile. A warrant was obtained for the search of the **TARGET DEVICES**. Therefore, while the FBI might already have the necessary authority to examine the **TARGET DEVICES**, because the Kenosha County Sheriff's Department's focus was on the stolen automobile, I seek this additional warrant out of an abundance of caution to be sure that an examination of the **TARGET DEVICES** will comply with the Fourth Amendment and other applicable laws.

19.     The **TARGET DEVICES** are currently in storage at 1000 55th Street #1, Kenosha, WI.  In my training and experience, I know that the **TARGET DEVICES** have

7

been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** first came into the possession of the Kenosha County Sheriff's Department.

20.     As a result of my training and experience, I know that drug dealers and criminals use cellular phones to conduct their business and plan crimes. I am also aware that cellular telephones provide narcotics traffickers and criminals with mobile access and control over their illegal trade. They often use cellular telephones to communicate with one another in furtherance of their activities. I am also aware that drug dealers and criminals use multiple cellular telephones to try and thwart law enforcement from uncovering their illegal activity. I am also aware that individuals engaged in illegal activities take pictures using their cellular phones of themselves with narcotics and firearms. I know cell phones frequently retain information for long periods of time, including retaining call histories, text messages, voicemail messages, photographs, internet history, GPS location, and other information that can be retrieved from the cell phone even long after the cell phone ceased to be used. If unused and unaltered, like the **TARGET DEVICES** in this case, data can remain indefinitely.

21.     Based on my training and experience, I believe that the evidence recovered/observed during law enforcement officers' initial examination of the **TARGET DEVICES** following HEREDIA's arrest in a stolen automobile demonstrates that HEREDIA is involved in drug trafficking. I also believe HEREDIA maintained ownership and/or control over the **TARGET DEVICES**.

22.     Additionally, based upon the facts described above, I believe that HEREDIA used the **TARGET DEVICES** to facilitate controlled substances transactions and they are likely to contain evidence of drug trafficking, which may likely be stored and recorded on the **TARGET DEVICES**. More particularly, I believe that there is probable cause to believe that a search of the information contained within the **TARGET DEVICES** described above will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances.

<u>**TECHNICAL TERMS**</u>

23.   Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of

9

flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents,

10

spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24.  Based on my training, experience, and research, I know that the **TARGET DEVICES** have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

11

26. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICES** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the

12

structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. Nature of the examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICES** to human inspection in order to determine whether it is evidence described by the warrant.

28. Manner of execution. Because this warrant seeks only permission to examine the devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION AND DELAYED NOTICE REQUEST

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICES** described in Attachment A to seek the items described in Attachment B.

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that

13

providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of the **TARGET DEVICES** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

## <u>ATTACHMENT A</u>

The properties to be searched are as follows:

    a.  Apple iPhone 15 Pro - IMEI: 352400477209551, hereinafter, TARGET DEVICE 1; and

    b.  Apple iPhone 15 Pro – IMEI: 354070966587706, hereinafter, TARGET DEVICE 2.

TARGET DEVICES 1 and 2, or the TARGET DEVICES, are currently located within the custody of Kenosha County Sheriff's Department, located at 1000 55th Street #1, Kenosha, WI.

This warrant authorizes the forensic examination of the TARGET DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## <u>ATTACHMENT B</u>

1.      All records on the TARGET DEVICES described in Attachment A that

relate to violations of 21 U.S.C. §§ 841 and 846, and involve Rosendo HEREDIA, from

2014 – Present, including, but not limited to:

      a.  Lists of customers and related identifying information:

      b.  Types, amounts, and prices of drugs and firearms trafficked as well as dates, places, and amounts of specific transactions;

      c.  Any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

      d.  Any information recording schedule or travel;

      e.  All bank records, checks, credit card bills, account information, and other financial records;

      f.  Photographs and/or videos depicting possession of drugs and firearms;

      g.  Any evidence related to either the ownership, purchase, or possession of drugs and firearms;

      h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses: and

      i.  All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the TARGET DEVICES;

2.      Evidence of user attribution showing who used or owned the TARGET

DEVICES at the time the things described in the warrant were created, edited, or

deleted, such as logs, phonebooks, saved usernames and passwords, documents, and

browsing history;

1

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2